## Richmond.

## MILLER v. MILLER'S ADM'R AND OTHERS.

### JANUARY 23, 1896.

1. EQUITABLE SEPARATE ESTATE—*No Particular Words to Create—" To Her Only Use and Behoof " Sufficient—Trustee Not Necessary.*—No particular form of words is necessary to create a separate estate in a married woman. It is sufficient if the instrument, in any way, shows that it was intended for the wife to have the property to her sole and separate use. And though express trustees are usual in equitable separate estates, they are not necessary. If the property be given directly to the wife by apt words to create a separate estate, equity will treat the husband as trustee as to such property. A conveyance of land to two persons " to their only use and behoof," one of whom is a married woman, vests in the married woman a separate estate in her share of the land.

2. EQUITABLE SEPARATE ESTATE—*Liability for Debts—Evidence of Intention to Charge.*—The equitable separate estate in fee in lands, which a married woman holds free from any restraint on her powers of alienation, is liable for the payment of debts contracted on the faith and credit of it, which liability a court of equity will enforce during the coverture, or after its termination; and, if the rents and profits of such real estate will not pay such debts in a reasonable time, the land itself may be sold for that purpose. The execution of a bond, note, or other writing for the payment of money by such married woman, whether as principal or surety, is sufficient evidence of an intention to charge such separate estate.

3. EQUITABLE SEPARATE ESTATE—*Liability for Open Accounts.*—Where husband and wife occupy, as a home, the separate equitable estate in fee of the wife, and husband and wife employ laborers to cultivate the land for her benefit, which cultivation is necessary for her support and the enjoyment of the · estate, the separate estate is liable for such services, though only evidenced by open account.

4. Evidence—*Exception to Incompetency of Witness—Cross-Examination.*—
   If, after an exception has been taken to the competency of a witness,
   the exceptor cross-examines him as to matters not brought out on the
   examination in chief, against the objection of the party calling him,
   the exceptor thereby waives his exception to the competency of the
   witness and makes him his own witness.

Appeal from a decree of the Circuit Court of Culpeper
county, pronounced March 26, 1892, wherein the appellant
was the complainant, and the appellees were the defendants.

*Reversed.*

This was a suit in chancery brought by the appellant for
the purpose of having the estates of his father and mother,
John A. Miller and Sarah J. Miller, settled under the direc-
tion of the court, and especially for the purpose of having an
account of the debts and their priorities, and subjecting their
real estate to the payment of said debts.    The complainant
sets forth in his bill an indebtedness to him, evidenced by
several bonds of his father and mother, exhibited with the bill,
and also an indebtedness of his mother to him of $360 for
three years' services on her farm.    He charges that his mother
owned an equitable separate estate in a tract of seventy-five
or eighty acres of land, and also a small personal estate.    The
chief contention related to the liability of the land for the
payment of the complainant's debt.    The land was acquired
by his mother by a deed from her father, dated April 20,
1867, by which he conveyed to his daughters, Maria E. White
and Sarah J. Miller (then a married woman), a tract of land
in Culpeper county, " to have and to hold the hereby-granted
premises unto the said Sarah J. Miller and Maria E. White
forever, to their only use and behoof."    The land was after-
wards divided between these daughters, and each thereafter
held her share in severalty.

The evidence showed that Sarah J. Miller and her husband

lived on the land thus acquired, as a home, and used and enjoyed it, by having it cultivated and taking the proceeds for their support. A part of the time the land was cultivated on shares, but for several years the complainant lived with his parents on the land, and cultivated it for $120 a year. The complainant, in his deposition, states : " My father and mother agreed jointly to pay me $120 a year."

*Rixey & Barbour*, for the appellant.

*Hill & Jeffries* and *Jeffries & White*, for the appellees.

RIELY, J., delivered the opinion of the court.

The first question to be disposed of is whether or not Sarah J. Miller took a separate estate in the land conveyed to her jointly with Maria E. White by the deed from Carter B. Cropp and his wife, *to their only use and behoof*.

No particular form of words is necessary in order to vest property in a married woman for her separate use, and thus create a separate estate. Whenever it appears, either from the language used, or from the nature of the transaction, or from the whole context of the instrument giving the estate, that it was intended for the wife to have the property to her sole and separate use, that intention will prevail ; but such intention must be clear and unequivocal, for the law will not lightly deprive the husband of his legal rights. *Nixon* v. *Rose, Trustee*, 12 Gratt. 425, 428 ; Burks' " Separate Estates," p. 12 ; 1 Minor's Insts. 317 ; Bishop on Law of Married Women, sec. 828 ; Pomeroy's Eq. J., sec. 1102, and 1 Leading Cases in Equity, Pt. II., p. 732.

Certain words or expressions, where a contrary intention is not disclosed by other parts of the instrument conferring the estate, have been held *per se* to manifest an intention to create

Opinion.

an estate for the separate use of the wife. And among the words and phrases so construed are the following: " For her sole use and benefit "; " for her own and sole use "; " for her own use and benefit, independent of any other person "; " for her sole and only use," and " only for the use and benefit of the wife or her heirs." *Nixon* v. *Rose, Trustee, supra;* 1 Minor's Institutes 317, 318; Schouler on Husband and Wife, sec. 192; Bishop on the Law of Married Women, sec. 828, and 1 Leading Cases in Equity, Part II., pp. 733–34.

In the case at bar the gift is simply " to their [her] only use and behoof." These words manifest at least as strong an intention to exclude the rights of the husband as some of those which, as we have seen, have been held *per se* to create an estate for the separate use. It is difficult to perceive any substantial difference between the words " to her only use and behoof" and the words " for her sole use and benefit," or the words " for her own and sole use," or the words " only for the use and benefit." The deed is a very simple one, and contains nothing whatever besides the words " to their only use and behoof" to explain or qualify the gift. It being made to her while a married woman, and expressed to be for " her *only* use and behoof," we are of opinion that the words annexed to the gift clearly manifest an intention to exclude the rights of the husband, and created in her an equitable separate estate in fee.

The deed conveyed the land directly to her, and not to a trustee for her use and benefit. This, however, makes no difference in the result, for it is a fundamental maxim of equity that a trust shall never fail for want of a trustee. "Although the wife's separate estate is an equitable one," says Mr. Pomeroy, " being in conception of equity a trust estate with the legal and equitable titles separated ; and although in strict theory, and in every regular form of settlement, the legal title should be conveyed to or held by express

trustees, yet it is well settled, whatever doubts may have once existed, that the interposition of actual trustees is unnecessary." 3 Pom. Equity Jur., sec. 1100. If the property is given, by sufficient and apt words to express the intention, directly to the wife, for her sole and separate use, without the intervention of trustees, equity will carry the intention into effect, and treat the property as her separate estate, by declaring and holding the husband himself as trustee for her with respect to such property. 1 Leading Cases in Equity, Pt. II., p. 689; 1 Minor's Insts. 319; Story's Eq. Jur., sec. 1380, and *Jones* v. *Clifton*, 101 U. S. 225, 229.

Inasmuch as Mrs. Miller took under the deed from her father an equitable separate estate in fee in her share of the land, free from the imposition of any restraint on her power of alienation, either expressly or impliedly, she had the power to make it liable for her contracts, which liability may be enforced in a court of equity. The extent of the liability of the separate estate for the general engagements of the married woman, and the manner of its enforcement, were fully considered in the case of *Price, by, &c.* v. *Planters National Bank et als.*, decided at the present term, *ante*, p. 468, which renders any extended discussion of the subject here unnecessary. It was there held that the liability will be enforced, as well after the termination of the coverture as during its existence; and that where the separate estate consists of realty, only the rents and profits thereof will be subjected to the payment of the debts, unless these will never discharge the debts, or will not do so within a reasonable time, in which case the land itself may be sold.

Upon a review of the evidence, we are of opinion that there is no error in the decree of the Circuit Court establishing the debts reported by Commissioner Grimsley to be a charge in favor of the appellant upon the separate estate of Sarah J. Miller, deceased. The report of the commissioner is sustained

by the evidence, whether the testimony of the appellant be admitted or rejected.

The debts are in part evidenced by her bonds; and it has been held time and again by this court that the execution of a bond, note, or other writing for the payment of money by a married woman having an equitable separate estate, whether as principal or surety, was sufficient evidence of an intention to charge the separate estate, without any proof of a positive intention to do so, or without even a reference to such estate contained in the writing. In no other way could the instrument be made effectual, and it could not be presumed that she intended to do a vain thing in executing it. *Burnett and Wife* v. *Hawpe's Ex'or*, 25 Gratt. 481; *Darnall and Wife* v. *Smith's Adm'r*, 26 Gratt. 878; *Leake, Trustee*, v. *Benson*, 29 Gratt. 153; *Harshberger's Adm'r* v. *Alger and Wife*, 31 Gratt. 52; *Frank & Adler* v. *Lilienfeld et als.*, 33 Gratt. 377, and *Bain & Bro.* v. *Buff's Adm'r*, 76 Va. 371.

The rest of the debts are open accounts for wages due for labor performed in the cultivation of the land which was her separate estate. The land was occupied by herself and her husband, who seems to have been an invalid and the owner of only a small amount of personal property, as their home. Its cultivation was for her benefit, and necessary for her support and the enjoyment of the estate. And if the testimony of the appellant is read, as we think it should be, it is clearly shown that he was employed, at the prices charged, by Sarah J. Miller and her husband, and that the services were duly rendered.

He was asked but a single question on his examination-in-chief, and only examined as to the statement made by the witness, E. C. Wood, that he (the appellant) had told him (Wood) that he was working for a part of the crop, which statement he wholly denied. Upon this matter he was not cross-examined at all, but the counsel for the appellees com-

menced at once to subject him to a most rigid and protracted examination upon all the matters of fact involved in the suit. This was done, too, after exception by the counsel for the appellant, and notice. that if the appellant were cross-examined as to other matters than those to which the examination-in-chief related, he must be treated as a witness for the appellees, and the exception as to his competency waived.   In the case of the *Philadelphia and Trenton R. R. Co.* v. *Stimpson*, 14 Peters 448, 461, it was said by Judge Story, in delivering the opinion of the court, "that a party has no right to cross-examine any witness, except as to facts and circumstances connected with the matter stated in his direct examination.  If he wishes to examine him as to other matters, he must do so by making the witness his own, and calling him, as such, in the subsequent progress of the cause," which was practically what was done in this case.   And to the same effect is 1 Greenleaf on Evidence, sec. 445.

The course of cross-examination pursued was, in effect, to make the appellant the witness of the appellees, and to waive their exception as to his competency.

We find no error in the decree of the Circuit Court, except its refusal to subject the separate estate of Sarah J. Miller to the payment of the debts due to the appellant, and which it established against her estate.   For this error its decree, to that extent, must be reversed, and the cause remanded to the Circuit Court, with direction to cause the land to be rented for the payment of the debts until they are discharged, or to sell the same for that purpose, if the rents and profits of the land will not discharge the debts, or do so within a reasonable time.

*Reversed.*