# CHARLESTON.

WILLIAM WOODYARD, ADMR. *v.* LIZZIE SAYRE *et al.*

Submitted March 8, 1922.    Decided March 21, 1922.

1. MORTGAGES—*Burden of Proving Payment on Mortgagor.*

Where a deed, absolute on its face, conveys real estate for a consideration equal to its value, and the personal representative of the grantor sues to have it declared and treated as a mortgage, and it is admitted by the grantee to be a mortgage to secure payment of indebtedness owing to him, it is error to cancel said deed until it is established that the indebtedness is paid. The burden of proving payment, by a preponderance of evidence, is on the personal representative. (pp. 551-552).

2. EXECUTORS AND ADMINISTRATORS—*Decedent's Protested Check and Negotiable Notes in Payee's Hands Prima Facie Evidence of Debt Against the Estate.*

A protested check and negotiable notes executed by a decedent a short time before his death, and in the hands of the payee, are prima facie evidence of indebtedness against the estate, and when produced and filed in a proper suit, the burden of proving payment rests upon the administrator, by a preponderance of the evidence. (pp. 551-552).

3. SAME—*Decedent's Creditor's Possession of Bank Stock is Prima Facie Evidence of Creditor's Absolute or Conditional Ownership, and the Burden of Proof is on the Administrator Seeking to Recover it.*

Possession of a certificate of shares of bank stock held by a creditor of a decedent at the time of his death is prima facie evidence of the ownership thereof by the creditor, either

absolute or conditional, and if the administrator of the decedent seeks to recover the stock, the burden is upon him to successfully rebut such evidence of ownership in the creditor. (pp. 551-522).

4. WITNESSES—*Administrator Relying on Cross-Examination of Party Waives Objection to His Evidence Which Otherwise Might be Incomplete.*

And in such case, if the administrator relies upon cross-examination of the possessor of the stock to disprove such absolute or conditional ownership, he thereby makes him his witness and waives objection to his evidence which otherwise might have been incompetent. (p. 555).

5. DISCOVERY—*Answers to Interrogatories in Bill of Discovery Held to Constitute Prima Facie Evidence for Answering Party.*

Answers, under oath, to interrogatories propounded in a bill for discovery, which are responsive, full, complete and unequivocal, constitute prima facie evidence in favor of the answering party, of the facts therein contained. (p. 555).

Appeal from Circuit Court, Wirt County.

Suit by William Woodyard, as administrator of the estate of Harry Sayre, deceased, against Lizzie Sayre and others, and, from a decree therein, the defendant H. P. Bode appeals.

*Reversed and remanded.*

*V. B. Archer,* for appellant.

*T. A. Brown* and *C. M. Hanna,* for appellee.

LIVELY, JUDGE:

From a decree of the Circuit Court of Wirt County, entered November 29, 1920, an appeal and supersedeas is prosecuted by H. P. Bode.

This decree divests Bode of his legal title to and equitable interest in a house and lot in the City of Huntington in Cabell County, and vests the title in the estate of Harry Sayre; divests him of title to and possession of a certificate of 5 shares of stock of the Wirt County Bank, delivered to him by Sayre and in Bode's possession at the time of the institution of this suit; renders a personal judgment against him for $168.00 in favor of said estate; disallows certain

notes as indebtedness against it; and decrees a protested check of the decedent in his favor as an unsecured debt.

Plaintiff, as administrator of Sayre's estate, filed his bill for the purpose of marshaling assets, converting the real estate into money, ascertaining and paying the indebtedness, and distributing the remainder, if any there should be, to the heirs. The bill charged that Bode held title to the house and lot in Huntington in trust, the exact nature of which was unknown to plaintiff, and asked for full discovery from Bode of the terms, conditions and provisions of the trust, and propounded interrogatories for that purpose. It also averred the possession of the certificate of shares of bank stock by Bode, alleging that the latter claimed to hold the same as collateral security for a debt owing by Sayre to him, and that he was demanding payment of his debts against the estate, and refused to surrender possession of the certificate until payment was made to him. Bode answered the bill, stating specifically and fully his transactions with Sayre, the amount of the debts he claimed, how and when contracted, when due, when and for what purpose the house and lot was deeded to him and how and for what purpose he held the certificate of stock. The interrogatories propounded were fully and unequivocally answered, both with reference to the Huntington property and the bank stock. The cause was referred to a commissioner in chancery, before whom Bode appeared, unaccompanied by counsel, and presented his evidence of indebtedness against the estate, consisting of a protested check in his favor signed by Sayre for the sum of $1,956.00, dated November 18, 1918, which was a few days before the maker's death; a note of $850.00 signed by Sayre, dated June 15, 1916, payable at 4 months to order of Bode at the First National Bank of Marietta, Ohio; and a like note for $853.33, dated the same day and payable in 4 months at said bank, less $57.67 interest paid June 15, 1917. He exhibited the certificate of bank stock with a memorandum attached, made by him at the time of the delivery of the stock to him, showing that he had loaned at that time

$500.00 to Sayre and that he held this stock for repayment of the loan.    He was then examined at great length by counsel for the administrator, by the commissioner and    by counsel representing a bonding company which was surety on the decedent's official bond as sheriff of Wirt County. From this examination it was shown that Sayre and Bode had dealt with each other extensively in the purchase    and sale of live stock, horses, mules and the like for many years, and up until Sayre's death.    In the year 1914 Sayre was indebted to Bode in the sum of $1700, and desired a loan of $300.00, to secure which he made the deed to the Huntington property on March 11, 1914, which deed was duly placed on record.    A short time before Sayre's death, on November 18, 1918, they had a settlement, when it was ascertained that Sayre owed, in addition to the notes, the sum of $1956.00, for which he gave this check.    Said check was protested for non-payment, and Sayre was notified and stated he would at once deposit a sufficient sum in the bank to meet the check, but unfortunately died a very short time thereafter.    It also appeared from this examination that since 1914 Bode had paid the taxes on the Huntington property and had collected, through Davis an agent, the rents which, less taxes, repairs and commissions, were credited on the indebtedness, and accounted for in the settlement; that since Sayre's death he had received $168.00 from rents, which should be credited on the indebtedness; that the property was held by Bode in trust to secure the payment of his said indebtedness, a fact which he had freely admitted both before and after Sayre's death and so told the administrator when he came to see him about the property.    In the cross-examination by Mr. Brown, of counsel for the administrator, he also detailed fully the circumstances under    which he became the possessor of the bank stock, and for which stock he had loaned to Sayre $200.00 in cash and delivered to him certain live stock in the year 1917.    There was no evidence before the commissioner to show release of the trust property, or payment of the various    notes, or the check.    We find nothing in the record which controverts the evidence of Bode, or which is not entirely consistent

with his claims of indebtedness, except the evidence of G. W. Roberts, a creditor of the estate, wherein he undertakes to detail a conversation with Bode in Robert's store room after Sayre's death and in which he says that Bode said he held title to the Huntington property and wound up the remark by saying that he did not have a dollar against it; and the statement of the administrator that Bode had told him that he, Bode, would make a deed for the property to any one he designated, that he had nothing in the property, and simply held it in trust for Sayre. These alleged conversations are entirely inconsistent with the evidence of Bode, his sworn answer and his conduct, all buttressed by the notes and protested check, given   eight days before Sayre's death.   The mortgage on the property (admitted to be such), the existence of the notes and check, the possession of the stock certificate with memorandum attached thereto, were sufficient proof of the indebtedness claimed, and the burden was upon the plaintiff to show payment. He offered nothing to this end.   Apparently the administrator had no evidence to offer showing payment, and it seems that the attorney for the bonding company assumed to conduct the cross-examination of Bode for the purpose of showing payments or credits to which the estate was entitled. After he had testified, counsel for the administrator, not finding anything of benefit in the testimony, objected to his evidence as incompetent.   It is now insisted that Bode's evidence did not establish his claims.   If the lengthy   and searching cross-examination of Bode is stricken out in its entirety, we do not think the plaintiff has carried the burden of proof to overcome the prima facie case made by appellant.   It will be remembered that Bode's deed was unconditional and on its face conveyed to him absolute title; his possession of the shares of stock created presumptive ownership; and hence it may be that his cross-examination evidence, even if it had been given in chief, being adverse to his absolute interest in the properties, would be admissible under the statute.   However, this is a suggestion only, and, not necessarily arising here, is not decided.

The commissioner reported that Bode claimed the stock

as security for a debt, which debt was not proven by competent evidence, although it showed that Bode was in possession of the stock at the time of Sayre's death.    As to the Huntington property, he reported that there was no competent proof of Bode's debt and therefore that the property belonged to the estate of Sayre, held in trust by Bode, but free from the trust claimed by him.    The commissioner "after some hesitation" reported the protested check of $1956.00 as an unsecured debt in favor of Bode.    He reported against allowing either of the notes as debts.    The rents collected by Bode after Sayre's death, amounting to $168.00 were reported as an obligation due the estate. Bode took exceptions to all of these findings of the commissioner, but the court overruled them and pronounced the decree, the substance of which is hereinbefore recited.    The production and filing of the trust deed, notes, protested check and certificate of stock do not fall within the prohibition of section 23, chap. 130 of the Code, as relating to personal transactions or communications between Bode and Sayre. These are silent witnesses and speak for themselves. The notes and check are evidences of debt.    The burden of proving payment was on the administrator.    *Dodrill* v. *Gregory,* 60 W. Va. 118.    We are unable to find the slightest evidence to discharge this burden. The commissioner reported against allowing these notes as debts against the estate because he was unable to ascertain whether they had been paid by the protested check, or whether the check was given in settlement of them.    Bode testified that they were not, but he considered his evidence incompetent for that purpose and rejected it.    But where is the evidence to the contrary? Both notes and check were in Bode's possession and imported valuable consideration.    The shares of stock evidenced by the certificate are personal estate, and were transferrable by delivery.    *Lipscomb* v. *Condon,* 56 W. Va. 116.    Bode's possession evidenced some title or right therein.    He was asked to discover his right of ownership or possession by the bill, to which he responded fully in his answer.    He was cross-examined by counsel for the administrator in order to ascertain the character of the con-

sideration paid for the stock, by which it was elicited that $500.00 had been loaned to Sayre with right of redemption, and a memorandum to that effect made at the time of the loan in 1917, and attached to the certificate. By such cross-examination upon a matter not testified to by Bode in chief, the administrator made him his witness in that particular and is bound by the answers. *McGuire, administrator* v. *Railroad,* 70 W. Va. 538, 543; *Miller* v. *Miller's Administrator,* 92 Va. 510. Upon the character of Bode's trust on the Huntington property, he was examined minutely by counsel representing the bonding company, and freely and fully explained when, where, for what purposes, and under what circumstances the deed was made to him, fully sustaining the facts set out in the answer. Davis, the agent in charge of the Huntington property, said that after the deed was made, he was directed by either Sayre or Bode, or possibly both, to collect rents and remit to Bode. The testimony of Underwood, who had agreed to buy the house and lot from Sayre by exchange of his farm in Wirt County, clearly evince the ownership and interest of Bode therein. Bode inspected the farm of Underwood for the purpose of ascertaining its value and took an active part in the proposed trade. This was a short time before Sayre's death. If he had no interest in the property why did he expend time and money in its proposed sale?

The deed, notes, check and possession of the stock establish a prima facie case of indebtedness against the estate, and that the properties were held, at least, as security for the payment; and this prima facie case has not been successfully overthrown by the evidence, on the contrary, it has been strengthened.

There is another cogent reason why the deed to the Huntington house and lot should have been adjudged to be held in trust to secure appellant's debts, and why the certificate of bank stock should have been decreed as collateral security for the payment of the loan of $500.00. The bill charges that the deed to the house and lot was not an absolute deed, but was a trust, the exact nature of which was unknown to plaintiff, and it asked for a full discovery from Bode, un-

der oath, of the terms, conditions and provisions of the trust under which he held, and propounded interrogatories for that purpose, to be answered by him; as to the bank stock it charged that Bode had possession thereof as collateral security for money advanced to Sayre in his life time, as claimed by Bode, and also propounded interrogatories seeking discovery of the right by which he held the stock, and if as a security for a debt, then to state when and what amount he advanced, with full particulars of the transactions.   These interrogatories, as before stated, were fully, specifically and unequivocally answered. His cross-examination confirmed and strengthened his answers. Can we consider the answers as evidence if so, how has it been met by the administrator? The bill, so far as Bode is concerned, is a mixed bill of discovery. It has a different status from the ordinary bill.   Plaintiff, having no evidence of the right of his intestate to the house and lot and to the stock, has sought to make appellant his witness by requiring him to answer interrogatories, under oath, and to ascertain from him the true ownership.   He has asked for a   full statement of the dealings between Bode and his intestate, and specifically, if there are any money claims against the properties, and if so when, where, how and for what purposes contracted?   Can these answers be treated as nullities, without probative value, at the option of plaintiff? How can it be said that no indebtedness has been proven in consideration of the full answers to these interrogatories backed by the notes, check, and possession of the properties? Answers to interrogatories in bills for discovery are very generally held to be evidence, but not conclusive, and may be contradicted by other testimony.   18 C. J. p. 1108, sec. 95, title ''Conclusiveness of Answer,'' and authorities cited. In this connection we have considered the case of *Knight* v. *Nease,* 53 W. Va. 51, wherein it is held that answers to interrogatories propounded in a suit to set aside a fraudulent conveyance cannot be considered as evidence for defendant. That suit was for the purpose of setting aside a deed from Nease to Lieving, his father-in-law, of a tract of land made in fraud of plaintiff who held a note against Nease at the

date of the deed.    The interrogatories were made to search
the conscience of the defendants as to payment of valuable
consideration and the bona fides of the transaction.   Neces-
sarily, the bill charged fraud.    The burden of rebutting
the fraud was upon defendants, the vendee and his son-in-
law.     Lieving, the father-in-law, answered the bill and in-
terrogatories, claiming to be an innocent purchaser of the
land for value. It was incumbent upon him to sustain these
answers by evidence sufficient to overcome the charges of
fraud, which evidence he failed to produce.     The interroga-
tories were not necessary for it was incumbent upon defend-
ants, in order to fully answer the bill, to incorporate there-
in the substance of the data asked for by the interroga-
tories.     That case is different from the case under consid-
eration.     Here there is no charge of fraud or of  bad faith,
simply a discovery in aid of a proper administration of the
estate.     The administrator has asked the    appellant to
speak about personal transactions with his decedent, about
which the statute sealed his lips.     But the broad statement
is made in *Knight* v. *Nease, supra,* that in no case is an answer
now entitled to any weight as evidence, by virtue of sections
36, 38 and 59 of chap. 125, Code, citing *Rodgers* v.   *Ver-
lander,* 30 W. Va. 619; and Judge BRANNON's dissenting
opinion in *Johnson* v. *Riley,* 41 W. Va. 147.    It will be ob-
served that the two cases last cited, like *Knight* v. *Nease,* were
suits to set aside conveyances as fraudulent, and the   ob-
servations therein are not properly applicable to answers to
interrogatories in bills of discovery.    The rule therein an-
nounced, that answers to bills are not evidence for defend-
ant, is based upon our statute, chapter 125 of the Code.
Does this statute, properly construed, divest answers to in-
terrogatories in bills of discovery of probative   value? Sec-
tion 36 of chapter 125 of the Code makes true and not re-
quiring proof every material allegation of the bill, and
every material allegation in the answer constituting claim
for affirmative relief, which is not denied; section 38 re-
quires verification of the bill if the answer is desired under
oath; but if the bill be not verified, then the answer need not
be verified, but if the answer be verified it has no   more

weight than if not verified; and section 59 provides that when a material allegation of the bill is denied by the answer, it puts the plaintiff to proof of the averment. These sections apply where there is an issue, an affirmance of some right and a denial of it. By section 48 of the same chapter, where interrogatories are propounded, defendant may be attached, or brought into court by an order for the purpose of answering the interrogatories, although the bill may have been taken for confessed as to him. Does not this contemplate that the information as disclosed by the answers shall be of some value as evidence? If not, why should a vain thing be required? If evidence for plaintiff, why not for defendant? Plaintiff cannot sift the answers thus obtained and use that portion favorable to him and discard that which is unfavorable. All must be considered or none. This section (48) seems not to have been considered in the case of *Knight* v. *Nease, supra.* A defendant may be forced by compulsory process to testify by answers to specific questions. Plaintiff is not conclusively bound by the answers. He may overcome them by satisfactory evidence. If they have no weight, it is difficult to perceive any good reason for bringing them into the case. Certainly the drastic step authorized by the statute meant that the replies should be given some importance in arriving at a just adjudication of the matters involved. Moreover, in the cases cited above there was an issue between the parties; the defendants were charged with fraud in making the conveyances attacked. There is no such issue here, no controversy; plaintiff is seeking the aid of Bode in the proper settlement of the estate.

Now, since all parties are allowed to be witnesses, discovery is less needed than formerly, and less frequently asked by technical bills of discovery, which in practice have been largely superseded by other methods of ascertaining the facts from the parties. But there are instances where a party has some important knowledge of a material fact and remains silent, thus requiring discovery. Section 48 provides for such cases. In the case at bar the rule of evidence prescribed by section 23, chap. 130, Code, prevented

Bode from voluntarily testifying about his transactions with Sayre, out of which his title and possession of the property arose. He was relieved from that rule of evidence by the administrator of Sayre when he was called upon to testify in relation thereto under oath. The case of *Knight* v. *Nease,* so far as it, by its general and broad terms, holds that answers to interrogatories in cases of this character are not to be considered as evidence, is disapproved. It will be observed that all of the above sections of chap. 125 of the Code were in the same chapter of the Code of 1868, bearing the same section numbers. The only addition (made in 1882) is to the latter part of section 38, as follows: "A general replication to an answer claiming affirmative relief, shall not apply to so much of said answer as states facts constituting a claim to such relief." This addition has no bearing upon the question now under consideration. In the case of *Jones* v. *Cunningham,* 7 W. Va. 707, 713, Judge HAYMOND said: "When the plaintiff, by bill of discovery, seeks a discovery from the defendant as to any matter of fact, the answer is evidence for defendant so far as it is responsive to such bill, as to the facts as to which discovery is sought; yet as to matters in respect of which the bill seeks no discovery, if the answer alleges anything affirmatively, it is not evidence for the defendant, but must be proved by him." Citing *Taylor* v. *Moore,* 2 Rand. 575; 2 Rob. (Old) Prac 330. The provisions of chap. 125, Code, above referred to were then in existence. We regard this case as in point specific discovery having been sought therein, and of equal if not superior authority to *Knight* v. *Nease.* The courts of Virginia have consistently held to the rule that in order to overcome the evidential effect of an answer to a mixed bill of discovery it is necessary to have a certain amount of opposing proof. *Shenandoah Land Co.* v. *Clarke,* 106 Va. 100. The Virginia rule is stated in *Thompson* v. *Clark,* 81 Va. 428, as follows: "By that rule the answer is treated as evidence, including its affirmative statements of fact which are pertinent to the discovery sought in the bill, and is conclusive unless overcome by the testimony of two opposing witnesses, or of one witness corroborated by other

circumstances, or by corroborating circumstances or documentary evidence alone.'' This decision followed the case of *Fant* v. *Miller,* 17 Grat. 187, which is the principal case, and which has been approved in *Morrison* v. *Grubb,* 23 Grat. 350; *Corbin* v. *Mills,* 19 Grat. 438; *Shurtz* v. *Johnson,* 28 Grat. 663; *Schultz* v. *Hansbrough,* 33 Grat. 581; *Bell* v. *Moon,* 79 Va. 349; and *Batchelder* v. *White,* 80 Va. 109. See monographic note to *Tate* v. *Vance,* 27 Grat. 571, Va. Reports Annotated, p. 599.

We think the sections of chapter 125 of the Code above referred to were not intended to, and do not, take from answers to interrogatories propounded in bills for discovery all value as evidence. On the contrary we think such answers in so far as they are responsive to the interrogatories are prima facie evidence of the matters therein contained. They may be rebutted and overthrown by evidence satisfactory to the chancellor. The answers of Bode to plaintiff's interrogatories are responsive, full, complete and unequivocal, are evidence in his favor, and have not been overcome by plaintiff.

The court erred in not sustaining the exceptions of appellant to the commissioner's report. The decree will be reversed and annulled in so far as it divests appellant of his equitable interest in the house and lot in Huntington, Cabell County, West Virginia; divests him of his equitable title to the 5 shares of capital stock of the Wirt County Bank, as security for the payment to him of his debt of $500.00, secured thereby; disallows the two notes, one for $850.00 and the other for $853.33, both dated June 16, 1916; decrees the $1956.00 protested check as an unsecured debt; and renders judgment against appellant for $168.00, rents collected by him from the Huntington property since Sayre's death. In all other respects the decree is not disturbed.

*Reversed and remanded.*