# Wytheville

## REEVES v. WHITE.

### June 14, 1923.

1. WILLS—*Contest—Soldier's Will—Instructions—Directing Verdict.*—A soldier wrote his aunt that his war risk insurance was made payable to his mother, but that his mother in case of his death was to give his aunt half of it. This letter was admitted to probate as the soldier's will. On appeal by the mother from the order of probate, the circuit court instructed the jury to find against the proposed will, because the letter designated no beneficiary under the war risk insurance act, and that under that act the aunt could not be named as beneficiary.

   *Held:* Error, as the jury were not concerned with what, if anything, passed by the will, and the instruction was directly within the prohibition of section 6003 of the Code of 1919, forbidding peremptory instructions.

2. WILLS—*Contest—Jury Limited to Due Execution when no Question Raised as to Capacity, Fraud or Undue Influence.*—On appeal from an order of probate of an alleged will, the capacity of the testator being admitted, and no question raised as to fraud or undue influence, the jury was limited to the due execution, in the manner required by law, of the instrument offered as a will.

3. WILLS—*Contest—Interpretation—Question of Law and Fact.*—While the interpretation of an instrument offered as a will is for the court, that is, whether such an instrument could operate as a will at all, it is beyond the province of the court to construe the effect of the will upon the war insurance of the testator, or to undertake to settle the property rights of the parties arising out of the construction of the terms of the will.

Appeal from a decree of the Circuit Court of Louisa county, in a will contest. Decree for contestant. Proponent appeals.

*Reversed.*

The opinion states the case.

*Duvall & Bladen,* for the plaintiff in error.

*Gordon, Gordon & Crank,* for the defendant in error.

BURKS, J., delivered the opinion of the court.

The following letter from a soldier in service, to his aunt, was admitted to probate as his will by the clerk of the Circuit Court of Louisa county:

> "44th Company 11th Prov. Battalion
> "155 Depot Brigade.
> "Camp Lee, Virginia, July 1st, 1918.
>
> "Dear Aunt:
>
> "Your Letter was rec. & I was glad indeed to hear from you to know all was usually well and getting along alright.  I am well and getting very well, in camp I had my Insurance made to Mother But I wrote to her and told her about it and if anything should happen to me she will get $57.50 a month until she has drawn $10,000 and she is to Give you Half it, I couldn't have made it out to Both of you all, now this is in case of anything Happen to Me Witch I hope nothing wont happen to me, all I can do trust in the Lord, Witch I am doing. Give my love to Charlie and his wife.  Hope to hear from you all real soon.  I had a Letter from Francis last week, she was well.  Give my love to all the rest.
> "Good Bye
> "From
> "George White."

From the order of probate, the testator's mother appealed to the circuit court of the county, where the case was heard *de novo* pursuant to section 5249 of the Code. The record is very meagre and omits many things that must have appeared in the trial court.  No question was raised in the circuit court as to the mental or physical

capacity of the testator, and it was clearly proved, in fact it was not denied, that the letter was wholly in the handwriting of the testator. It further appeared from the testimony on behalf of the aunt that the testator's mother was unable to care for him in the early years of his childhood, and that he was sent to his grandfather and grandmother, where the aunt lived, and that she took care of him and clothed him, and that he remained there until he was "quite a young man." One of the witnesses speaks of the aunt as the "stepmother" of the testator. The mother testified that she did not leave the testator, when a small child, with his aunt, "and does not know who took care of him." She further testified that she received a letter from her son, dated June 30, 1918, the day before the date of the letter to his aunt, telling her of the life insurance taken out for her benefit, in which appears the clause, "I want you to give Aunt some of it," and that no change or alteration had been made in it since it was received, but admitted that an erasure was apparent under the word "some" on last page of letter. The letter referred to was as follows:

"44th Company 11th Prov. Battalion.
"155 Depot Brigade.
"Camp Lee, Virginia, June 30-18.

"My dear mother:

"I will write you Just a few lines to Let you hear from me I am well and getting along alright. I have Been here every since the 19th of June, I wrote you a card soon after I got here and haven't rec'd no ans. from you, I didn't —— weather you got it or not. Hope you all is well and getting along alright. Give my Love to all. I don't know how long we will Be here, did Meredith get his call this time or have he got Well yet,

I had my insurance made over to you, it Ten Thousand
dollars ($10,000 in case if I should get killed, so you will
draw $57.50 a month until you Draw the Hole amount.

"I want you to Give Aunt some of it.

"This is if anything happen to me.    Hope to hear
from you soon.    Love to all.

"Good Bye

"From your son,

"George White."

"My address

"44th Company 11th. Prov. Battalion 155 Depot
Brigade."

On this subject, the aunt testified that when she re-
ceived the letter of July 1, addressed to her, she visited
the mother who read the letter of June 30, addressed to
her, and that "the letter at that time read that she was
to give me half of the insurance."    She further testified
that an "award had been made in war risk insurance
bureau to her of one-half of the war risk insurance
policy of" the testator.    No policy or other evidence of
the insurance was offered in evidence.    The testator
died October 4, 1918.

Under these circumstances the trial court directed the
jury to "find for the contestant Emmer Henderson
White, against the proposed will of George White, de-
ceased," and the jury accordingly rendered the follow-
ing verdict:    "We, the jury, in pursuance of the in-
structions of the court, find that the said paper writing
dated July the first, 1918, offered as the will of G. F.
White, is not nor is any part thereof the will of said
decedent."

The instructions given by the court over the objec-
tion of the proponent of the will were as follows:

"The court instructs the jury that you will find for the contestant, Emma Henson White, against the proposed will of George White, deceased, because the letter offered as a will of the said decedent designates no beneficiary under said policy in pursuance of U. S. Comp. St., 1918, section 514 u u u, and the amendments thereto, commonly known as the war risk insurance act, and original beneficiary therein, the said Emma Henson White, is not in law, effected by said letter.

"You are further instructed that the said paper writing cannot operate as a legal will of the said decedent, passing the insurance to Lucy Reeves, because under said statute she was not permitted to be named as beneficiary, and is excluded thereby from taking said insurance and, therefore, said will is void."

[1-3] The instructions were plainly erroneous. The jury were not concerned with what, if anything, passed by the will; but the capacity of the testator being admitted, and no question raised as to fraud or undue influence, the jury were limited to the due execution, in the manner required by law, of the instrument offered as a will. While the interpretation of the instrument offered as a will was for the court, that is whether such an instrument could operate as a will at all, it was beyond the province of the court in this proceeding to construe the effect of the will upon the insurance in controversy, or to undertake to settle the property rights of the parties arising out of the construction of the terms of the will. *Bell* v. *Davis*, 43 Okla. 221, 142 Pac. 1011, Ann. Cas. 1917C, 1075; 28 R. C. L. 377, sec. 379. The instructions are directly within the prohibition of section 6003 of the Code, and clearly not within the exception mentioned in *Small* v. *Va. Ry. & P. Co.*, 125 Va. 416, 99 S. E. 525.

Just how or why a jury was called in the case does not

appear from the record.    It is not contemplated by section 5249 of the Code, and the record does not disclose, that the case was brought within the purview of section 5257.

The record is not in such condition as would warrant a final judgment by this court under the provisions of section 6365 of the Code, and the judgment of the circuit court will, therefore, be reversed, and the cause remanded to that court for a new trial, not in conflict with the views hereinbefore expressed.

*Reversed.*