# Wytheville.

## HARGRAVE'S ADMINISTRATOR V. SHAW LAND AND TIMBER CO.

### June 9, 1910.

### Absent, Harrison and Cardwell, JJ.

1. RAILROADS—*Trains—Unusual Hours—Negligence.*—The owner of a railway or tramway may run its locomotives thereon at any time it pleases. The fact that it is running its locomotives at an unusual or unexpected hour is not negligence if it exercises reasonable care to give notice of their approach.

2. RAILROADS—*Trains—Absence of Headlight at Night—Other Warnings.*—The mere failure to have a headlight on a locomotive at night, when not required by statute, is not negligence when other means, equally efficient, are used to give warning of its approach. In the case at bar, the other means were clearly sufficient.

3. NEGLIGENCE—*Invitees—Duty of Owner of Premises.*—The owner of premises is not an insurer of the safety of invitees. It is his duty to use ordinary care not to expose them to danger while exercising reasonable care for their own safety. In order to hold the owner liable for an injury occurring on his premises, it must have been the natural and probable result of the condition of the premises, and one which, under the circumstances, he ought reasonably to have foreseen might probably occur.

4. RAILROADS—*Personal Injury—Invitees.*—An invitee on a railroad tract who is run over by a locomotive and killed at night, cannot recover of the company where it appears that at the point where he was killed the track was straight for more than a mile and the red hot end of the engine could be seen that far, and the whistle was sounded at four different points within a mile of the accident—once within two hundred yards and again within fifty yards of the scene of the accident. He was guilty of such contributory negligence as bars recovery by his representative whether he was walking on the track, or lying down on or near the track.

5. RAILROADS—*Personal Injury—Lack of Headlight at Night—Other Warnings—Last Clear Chance—Invitees.*—When the means used by a railroad company to warn persons on or near the track of the approach of a locomotive at night are sufficient for that purpose, the company does not owe such persons the duty of carrying a headlight on its locomotives. It is not the duty of the company to provide means not necessary for the running of its locomotives merely to enable it to protect persons on or near its track, even though they are invitees, from their own negligence while on its premises. The doctrine of the "last clear chance" is not applicable to such a situation; nor does the law impose such a duty upon the owner to an invitee upon his premises.

6. INSTRUCTIONS—*Directing Verdict—When Harmless.*—While directing a verdict is not in accordance with the practice in this State, it is harmless error where it appears that no other verdict could have been properly rendered, and a judgment based thereon will not be reversed on that ground.

Error to a judgment of the Circuit Court of Southampton county in an action of trespass on the case. Judgment for the defendant. Plaintiff assigns error.

*Affirmed.*

The opinion states the case.

*Jno. N. Sebrell, Jr.,* and *N. T. Green,* for the plaintiff in error.

*D. Lawrence Groner,* for the defendant in error.

BUCHANAN, J., delivered the opinion of the court.

The plaintiff's intestate was run over and killed by a locomotive of the defendant company, which was operating a narrow gauge logging rail, or tramroad. This action was brought to recover damages therefor.

The only ground of alleged negligence which the proof tends to sustain is that the defendant company, on the night

of the accident, was operating its locomotive without a head-light.

It appears from the record, considered as on a demurrer to the evidence, that the defendant company operated a saw-mill plant in Southampton county where it owned certain timber which it was converting into lumber. Its mill was located on its own property a few hundred yards from Ivor depot, a station on the Norfolk and Western Railway. From the depot to the saw-mill and from the saw-mill down into the woods, the defendant owned and operated a narrow guage rail, or tramroad, which was five or six miles in length. The road was used by the defendant company to bring logs and timber from the woods to the mill, to haul lumber to Ivor depot and to bring supplies from the depot to the mill and to the logging camp in the woods near the mill. About twelve feet from the defendant's railway track it had built four or five "shacks" or "shanties." which some of its one hundred and twenty-five employees working at the saw-mill used as dwellings. Of those so using them was the plain-tiff's intestate. The usual and customary, if not the only direct and practicable route from these shanties to Ivor depot. where stores were located at which the defendant's employees purchased supplies, was along and on the railway, and this fact was well known to the defendant company. While it had no schedule for operating its locomotive and cars, the train generally ran between the hours of seven o'clock a. m., and six o'clock p. m.

On the day of the accident the decedent, after working hours, went from the mill to Ivor station, purchased some supplies and, while on his return trip, between eight and nine o'clock at night, was struck by the locomotive of the defendant, which inflicted injuries causing his death. When so struck the locomotive was being operated without a head-light, but its front end, on account of some defect, was red

hot. The plaintiff's intestate and the locomotive were approaching each other. The railway was straight and the red hot front of the locomotive could be seen a mile from the shanties, a few feet from where the accident occurred. The whistle of the locomotive was blown four different times within that mile—for the station about a mile away, then for the crossing three-fourths of a mile off, again when at a distance of two hundred yards from the shanties, and again when they were only fifty yards distant. The engineer, who was at his post of duty looking ahead and could see thirty or forty feet in front of the locomotive by the light of its red hot end, did not see the plaintiff's intestate. One of the men running on the train occupied the seat of the fireman (who was firing at the time), looking ahead, saw the locomotive strike something which at first he thought was an old pair of pants lying on the railway. "The engine struck," he testified, "what I took to be an old pair of pants, and it commenced to roll, and it seemed I discerned the limbs of something, and I turned to the fireman and said, 'I believe you struck a man,' and he said, 'Get down and look,' and when I got where I supposed was the rags I saw a man lying in the form I thought was the rags." The engine was running at about four miles an hour, and could have been stopped in thirty feet.

If there had been a headlight, it would have lighted up the track thirty or forty yards in front of the engine.

The plaintiff's counsel insists that under the facts disclosed by the record, the plaintiff's intestate was not a mere licensee but an invitee. Conceding, without deciding, that this is true, what degree of care did the defendant company owe to the plaintiff's intestate?

In the recent case of *Clark* v. *Felhaber*, 106 Va. 803, 56 S. E. 817, 13 L. R. A. (N. S.) 442, it was held that it was the duty of the owner of premises to keep them

in a reasonably safe condition for those who may enter thereon by his invitation, express or implied. He is not an insurer of their safety, and in order to hold him liable for an injury occurring on the premises, it must have been the natural and probable result of the condition of the premises, and one which under the circumstances he ought reasonably to have foreseen might probably occur.

It is not claimed that the premises upon which the plaintiff's decedent was traveling were unsafe or dangerous in any respect except from the running of the locomotive and cars upon them. That the locomotive and cars would run upon the rail, or tramroad, was as well known to the plaintiff's intestate as it was to the defendant company. The fact that the locomotive was running at the time of the accident after night, and that it seldom ran after six o'clock in the evening, was not negligence on the part of the defendant. It had the right to run its locomotive at any time. If in running at an unusual or unexpected hour on the night of the accident it had failed to exercise reasonable care to give the plaintiff's intestate warning of that fact and of its approach, then there might be ground for claiming that it was negligent; but the uncontradicted evidence shows that while the locomotive had no headlight, its front end was red hot and could be seen on the straight line of road a mile; and that the whistle of the locomotive was blown at that distance for the station, again a quarter of a mile nearer for the crossing, then within two hundred yards and then within fifty yards of where the accident occurred. This was clearly sufficient to warn the plaintiff's intestate of the approach of the locomotive, and if there had been a headlight it could not have been seen by him any farther than the red hot end of the locomotive. The mere failure to have a headlight, when not required by statute, cannot be considered negligence when the other means of warning the plaintiff's intestate of the approach of the locomotive, equally efficient, were used.

But if the failure to have a headlight were negligence, the plaintiff's intestate was clearly guilty of contributory negligence. If he was walking on the railroad, as the declaration alleges, he could not have failed, in the exercise of due care, to see the red hot end of the locomotive as it approached, neither could he have failed to hear the whistle which was blown, as before stated, four several times as it approached him, once within two hundred yards and again within fifty yards of the point where he was injured. If he was lying down on or near the track, as the evidence tends to show. he was plainly guilty of contributory negligence.

But it is insisted that even if he were guilty of contributory negligence, he was entitled to recover upon the doctrine of "the last clear chance." This contention is based upon the theory that if the defendant's locomotive had been operated with a headlight, those in charge of the locomotive would, or in the exercise of reasonable care could, have discovered the peril of the plaintiff's intestate and have avoided the accident.

Conceding that the accident might have been avoided if there had been a headlight, was it the duty of the defendant to operate its locomotive with a headlight when, as we have seen, the means used to warn the plaintiff's intestate of the approach of its locomotive was sufficient for that purpose?

The owner of premises upon which another is invited, expressly or impliedly, to come, is not an insurer of that other's safety, and all that the invitee is entitled to demand or expect is that while exercising reasonable care for his own safety the owner of the premises will likewise use ordinary care not to expose him to danger. In order to hold the owner liable for an injury occurring on the premises, it must have been the natural and probable result of the condition of the premises, and one which, under the circumstances, he ought reasonably to have foreseen might probably occur. *Clark* v. *Fehlhaber, supra,* and authorities cited.

Tested by this rule, the defendant was not liable under the rule of the last clear chance for operating its locomotive without a headlight. The means used to warn the plaintiff's intestate of the approach of the locomotive were ample, as we have seen, if he had been exercising due care or any care whatever on his own part. The injury was not the natural and probable result of the defendant's running its locomotive with the warnings given, nor was the injury one which the defendant, under the circumstances disclosed by the record, ought reasonably to have foreseen might probably occur. It was not its duty to provide means not necessary for the running of its locomotive or for giving the plaintiff's intestate sufficient warning of its approach, merely to enable it to protect him from the result of his own negligence while on the defendant's premises. To hold the owner of premises liable for failing to provide in advance appliances for the purpose of protecting an invitee from the results of his own negligence, when his peril could have been discovered by the use of such appliance and the injury avoided, would be requiring not ordinary care but extraordinary care for the safety of the invitee. The law does not impose such a duty upon the owner to an invitee upon his premises.

Considered as upon a demurrer to the evidence, we are of opinion that the plaintiff's intestate was not entitled to recover in this case.

The action of the trial court in directing the jury to find a verdict for the defendant is assigned as error. While directing a verdict is not in accordance with the practice in this State, yet where it appears, as in this case, that no other verdict could have been properly rendered, the error was harmless, and the judgment will not be . reversed on that ground. *Taylor* v. *B. & O. Ry Co.*, 108 Va. 817, 62 S. E. 798, and cases cited.

The judgment of the circuit court must be affirmed.

*Affirmed.*