# Wytheville.

## SMALL V. VIRGINIA RAILWAY AND POWER COMPANY.

### June 12, 1919.

1. STREET RAILWAYS—*Injury on Track—Contributory Negligence—
   Question for Jury—Last Clear Chance—Refusal of Instructions
   Presenting Plaintiff's Theory of Case—Case at Bar.*—At the
   time of the accident involved in this case, a section of a street
   had been torn up and was too rough for ordinary travel. The
   condition of the street was designated in the record as an exca-
   vation. Plaintiff was riding a bicycle in a northerly direction
   between the rails of the western car track on the street oppo-
   site the excavation when he observed a street car coming south
   on that track and also some jitneys approaching in the same
   direction. To avoid the car and the jitneys he turned to the
   right and rode into the excavated area, fell from his bicycle
   and was struck by a north-bound car on the eastern track.
   Plaintiff's theory, supported by his evidence, was that he fell,
   not on the western track, but in the space between the tracks,
   where he lay until the south-bound car and jitneys had passed,
   and then, while attempting to arise, was struck by a north-
   bound car. Defendant's theory, supported by its evidence,
   was that the north-bound car was so close to the plaintiff at
   the time of his fall that he either fell against the front corner
   of the car, or such a short distance in front of it, that the
   motorman could not have avoided the injury. At the trial the
   plaintiff asked for two instructions, the first presenting the
   doctrine of the last clear chance, and the second submitting to
   the jury the question of the plaintiff's contributory negligence.
   These instructions were refused.

   *Held:* That plaintiff was entitled to an instruction upon his
   theory of the case.

2. STREET RAILWAYS—*Injury on Track—Contributory Negligence—
   Question for Jury—Instruction for Defendant—Case at Bar.*—
   Under the circumstances related in the preceding syllabus, the
   court instructed the jury that if they believed from the evidence
   that when plaintiff fell the car was so close that the motorman
   could not stop in time, or if when he fell he struck against
   the car or fender as he was falling, they must find for the

defendant, even though they believed "the motorman was neg-
ligent." This instruction presented the defense to the plain-
tiff's claim for recovery under the rule of the last clear chance.
If the instruction asked for by the plaintiff had been given,
then one presenting the converse of that proposition would
have been proper, but, even in that case, the words, "even
though you believe the motorman was negligent," appearing
in the instruction in question, would have been inapt and in-
appropriate.

3.  DIRECTING VERDICT—*Argument of Counsel—Case at Bar.*—Plain-
tiff's counsel, having excepted to the action of the court in re-
fusing to grant the instructions mentioned in the first syllabus,
and in giving defendant's instruction referred to in the second
syllabus, was proceeding to address the jury when counsel for
defendant objected on the ground that the argument was in
conflict with the instructions. The court sustained the objec-
tion and counsel for plaintiff then asked. Did the court mean
that under no circumstances could there be a recovery against
the defendant. The answer was, "Yes, as I have already told
you, you cannot recover a verdict against the" defendant.

*Held:* That the foregoing incident, taking place as it did in the
presence of the jury, was tantamount to a direction by the
court of a verdict for the defendant.

4.  DIRECTING VERDICT—*Practice in Virginia—Acts 1912, p. 52.*—
Heretofore it had not been the practice in Virginia, even in
a criminal case, to give instructions which amount in substance
to telling the jury that the evidence is not sufficient to convict
the prisoner. In Virginia the practice has been either to de-
mur to the evidence in a proper case, or to ask an instruction
directing a verdict upon a hypothetical case—that is, to tell the
jury if they believe so and so their verdict should be for the
plaintiff or the defendant, as the case may be. It is now pro-
vided by statute in Virginia, "that in no action tried by a jury
shall the trial judge give to the jury a peremptory instruction
directing what verdict the jury shall render." (Act of Febru-
ary 13, 1912, Acts 1912, p. 52.) Under this act, even in a case
where no other verdict could have been properly rendered, and
the error might therefore have been regarded as harmless, yet
the premptory instruction directing the verdict must be re-
garded as prejudicial and reversible error, notwithstanding
Acts 1914, p. 641, requiring the court at every stage of the
proceeding to disregard any error or defect in the proceedings
which does not affect the substantial rights of the parties.

5.  DIRECTING VERDICT—*Practice in Virginia—Acts 1912, p. 52.*—
*Scintilla Doctrine—Instruction.*—The statute against peremp-
tory instructions is not to be construed as applying to cases in

53

which the verdict of the jury depends necessarily and exclusively upon a question of law, such, for example, as the legal effect of a deed or contract; nor is it to be construed as reinstating the scintilla doctrine, formerly prevailing in this State but rejected by the Supreme Court of Appeals in *C. & O. Ry. Co.* v. *Stock*, 104 Va. 97, 108, 51 S. E. 161. The statute simply draws the line upon the giving of "a peremptory instruction directing what verdict the jury shall render." In all other respects the trial courts have the same power in giving and refusing instructions which they possessed before the act was passed.

Error to a judgment of the Court of Law and Chancery of city of Norfolk in an action of trespass on the case. Judgment for defendant. Plaintiff assigns error.

*Reversed.*

The opinion states the case.

*E. R. F. Wells,* for the plaintiff in error.

*W. H. Venable, A. D. Christian* and *E. R. Williams,* for the defendant in error.

KELLY, J., delivered the opinion of the court.

The Virginia Railway and Power Company owns and operates a double-track street railway on Granby street, in the city of Norfolk. At the time of the accident involved in this suit, a section of the eastern side of Granby street had been torn up and was too rough for ordinary travel. This condition, apparently due to preparation for paving the street, is designated in the record as an excavation. It extended laterally 183 feet and affected all of the eastern side of the street for that distance, including the eastern street car track and the space between the same and the western track. The use of the eastern track by street cars was not impeded. The west side of the street, including the

western car track, was paved and in good condition for travel of all kinds.

[1]   The plaintiff, B. T. Small, who was familiar with the above conditions, was riding a bicycle in a northerly direction between the rails of the western car track opposite the excavation when he observed a street car coming south on that track and also some jitneys approaching in the same direction on the western side of the street. He could not avoid the approaching street car by turning to the left, as that course involved a collision with the jitneys, and so he turned diagonally to the right. As he did so, carelessly it may be, he rode into the excavated area, fell from his bicycle and was struck by a northbound car on the eastern track.

Just what happened when he rode into the excavation is the subject of a direct conflict in the evidence, giving rise to two distinct theories of fact.

It is the theory of the plaintiff, supported by his own testimony and certain corroborating circumstances, that he fell, not on the rails of the western track, but in the space between the two tracks, and lay there until the southbound car and certain automobiles trailing behind it had passed, and then, while attempting to arise, was overtaken and struck by the northbound car, the sides of which, of course, projected over the rails. He claims to have looked over his shoulder to see if a car was approaching from the south before he tried to get up, and, seeing none, to have been struggling to his feet when he was struck. He was sixty-two years old, and perhaps not very agile. His contention is that the motorman ought to have seen his danger and stopped the car; and he seeks to recover upon the doctrine of the last clear chance.

It is the theory of the defendant, supported by the testimony of the motorman and certain corroborating circumstances, that the northbound car was so close to the plain-

tiff at the time of his fall that he either fell against the front corner of the car or such a short distance in front of it that the motorman, in the exercise of ordinary care, could not have avoided the injury.

The plaintiff was caught and carried some distance in the fender of the car, and this circumstance is relied upon as conclusive corroboration of the motorman's testimony, the argument being that if he had fallen between the tracks, his body, lying in the excavation, would have been cleared by the fender. This argument, however, apparently loses sight of the fact that the plaintiff says he was getting up when the car struck him.

A circumstance tending to corroborate the testimony of the plaintiff appears upon a comparison of his statement with that of the motorman, as follows: The plaintiff says that he turned to the right to avoid the southbound car, that this immediately resulted in his fall, and that at that time there was no northbound car anywhere near him. The motorman, who claims that he was not more than eight feet from the plaintiff at the time he first saw him, further states that no southbound car passed him near the point of the accident, but passed him, if at all, further down in the block. Accepting this latter statement as true, and giving to the plaintiff's testimony the credence which the jury might have given to it but for the peremptory instruction hereinafter referred to, it would appear that the motorman was mistaken in saying that he saw the plaintiff fall when his car was within eight feet of him. In other words, in this view of the evidence, after the plaintiff fell, the southbound car passed him and ran down the block some distance before it met the northbound car. This, of course, means that the latter, which was the motorman's car, was much more than eight feet away when the plaintiff fell, and necessarily weakens the defendant's theory and contention. Whether the jury would have taken this view of the evidence, thus

accepting the plaintiff's testimony as a whole and rejecting that portion of the motorman's which was in conflict with it, or would have rejected the plaintiff's account and accepted as a whole the motorman's version, is a question which cannot be answered, because, as we shall presently see, the court directed a verdict for the defendant.

At the trial the plaintiff asked for two instructions, the first of which presented the doctrine of the last clear chance as applicable to the case upon the plaintiff's view of the evidence, and the second of which submitted to the jury the question of the plaintiff's contributory negligence. Both of these instructions were refused, presumably because the trial court was of opinion that there could be no recovery by the plaintiff under any reasonable interpretation of the evidence. It follows from what we have already said that we do not concur in this conclusion. We are of opinion that the plaintiff was entitled to an instruction upon his theory of the case.

To sustain the action of the court in refusing any instructions at all on behalf of the plaintiff, it is contended that the case at bar is controlled by the decision of this court in *Virginia Railway & Power Co.* v. *Winstead's Adm'r*, 119 Va. 326, 89 S. E. 83. We cannot, however, accord to the cited case the effect attributed to it. Unlike the plaintiff in the *Winstead Case*, the plaintiff here was making a rightful and proper use of the street, and the only criticism that can be made of his conduct is that he may have been thoughtless and negligent in the manner in which he left the paved portion of the street and entered the excavated portion in his effort to avoid a collision with the street car. As to this latter question, we are unable to say, as a matter of law, that he was guilty of such negligence as would have barred his recovery, and likewise unable to say that such negligence on his part, if it existed, was the proximate cause of the ac-

cident. These questions, like that of the defendant's negligence, should have been submitted to the jury.

Nor is there any significance in the fact, relied upon by the defendant, that the testimony tends to show that the accident occurred after dark and in a dimly lighted portion of the street, because the motorman himself says he saw the plaintiff when he fell from his wheel.

[2] The only written instruction in the case was the following, given at the instance of the defendant: "The court instructs the jury that if you believe from the evidence that when the plaintiff rode into the excavation and fell, the car was so close that the motorman could not, by the exercise of ordinary care, stop it in time to prevent it striking the plaintiff, then you must find for the defendant, Virginia Railway and Power Company, even though you believe the motorman was negligent. The court instructs the jury that if you believe from the evidence that when the plaintiff rode into the excavation he fell and struck against the car or fender as he was falling, then you must find for the defendant, Virginia Railway and Power Company, even though you believe the motorman was negligent." This instruction presented the defense to the plaintiff's claim for recovery under the rule of the last clear chance. If the first instruction asked for by the plaintiff had been given, then one presenting the converse of that proposition would have been proper, but, even in that case, the words, "even though you believe the motorman was negligent," appearing in the instruction in question, would have been inapt and inappropriate. This language was doubtless used to express the idea that negligence to be actionable, must be the proximate cause of an injury; but the objection to its use here is that the only negligence charged or relied upon was the motorman's failure to stop the car after he discovered, or in the exercise of ordinary care ought to have discovered, the plain-

tiff's peril—the identical and sole question which the instruction itself submitted to the jury.

[3]   The plaintiff's counsel, having first excepted to the action of the court in refusing to grant the instructions requested by him, and in giving the defendant's instruction, was proceeding to address the jury when counsel for the defendant objected on the ground that the argument was in conflict with the instructions.   The court sustained the objection.   Counsel for the plaintiff then asked this question: "Does the court mean that under no circumstances there can be a recovery against the Virginia Railway and Power Company?" and the answer was:   "Yes, as I have already told you, you cannot recover a verdict against the Virginia Railway and Power Company."   Counsel for plaintiff having excepted to this action of the court, refrained from any further effort to argue the case, and the jury promptly rendered a verdict for the defendant.

It is manifest, as is practically conceded by the defendant, that the foregoing incident, taking place as it did in the presence of the jury, was tantamount to a direction by the court of a verdict for the defendant.   It is doubtful, indeed, whether a peremptory instruction in writing, without the somewhat dramatic setting presented in this case, would have had a more controlling effect upon the jury.

[4]   The practice of directing verdicts has never been in general favor with either the courts or the legislature in this State.   The history and present condition of the rule on the subject is summed up by Judge Burks in his work on Pleading and Practice, section 273, page 506, as follows: "If the evidence is such that the court would set aside any verdict found thereon in favor of a particular party, the great weight of authority is that the court may direct a verdict against such party, and such is the constant practice in the Federal courts.   Such, however, has not heretofore been the practice in Virginia, and it has been held, even

in a criminal case, that it is not the practice to give instructions which amount in substance to telling the jury that the evidence is not sufficient to convict the prisoner, and that such instructions should not be given. In Virginia the practice has been either to demur to the evidence in a proper case, or to ask an instruction directing a verdict upon a hypothetical case—that is, to tell the jury if they believe so and so, their verdict should be for the plaintiff, or the defendant, as the case may be. The tendency, however, of modern cases leans towards permitting the trial court to direct a verdict, and it is said that 'while directing a verdict is not in acordance with the practice in this State, yet where it appears, as in this case, that no other verdict could have been properly rendered, the error was harmless, and the judgment will not be reversed on that ground.' The basis of the holding is that the party complaining could not have been prejudiced by the instruction. It is now provided by statute in Virginia, however, 'that in no action tried by a jury shall the trial judge give to the jury a peremptory instruction directing what verdict the jury shall render.' " (Act of February 13, 1912, Acts 1912, p. 52.)

The profession, as is well known, has been divided in its views on the wisdom and usefulness of the conservative rule which has so long prevailed in Virginia and is now embodied in the statute referred to above by Judge Burks. See 16 Va. Law Reg. 241; *Idem,* 384; *Idem,* 401; 18 Va. Law Reg., 143.

It was not long after the publication of the above-cited discussions in 16 Va. Law Register, nor long after the decision in *Hargrave* v. *Shaw Land Co.,* 111 Va. 84, 68 S. E. 278, Ann. Cas. 1912 A, 151, until the act of February 13, 1912, was passed. The *Hargrave Case,* and the earlier one of *Taylor* v. *B. & O. Ry. Co.,* 108 Va. 817, 62 S. E. 798, appear to be the only Virginia cases in which the doctrine of harmless error has been applied to instructions which spe-

cifically and peremptorily, rather than hypothetically, direct a verdict. Both of these cases affirmatively stated that directing a verdict was not in accordance with the practice in this State. The following extract is from the *Hargrave Case:* "While directing a verdict is not in accordance with the practice in this State, yet where it appears, as in this case, that no other verdict could have been properly rendered, the error was harmless and the judgment will not be reversed on that ground. *Taylor* v. *B. & O. Ry. Co.,* 108 Va. 817, 62 S. E. 798, and cases cited."

It would seem clear, therefore, that the act of 1912 was passed for the express purpose of prohibiting the application of the doctrine of harmless error to the mandatory direction of verdicts. At the time of its passage, as we have just seen, this court still recognized peremptory instructions as erroneous, and had barely and cautiously gone far enough to sustain them in cases where the error was plainly harmless; and it can hardly be doubted, therefore, that the act meant to declare that even in such cases a violation of the settled rule of practice on the subject should not be regarded as otherwise than prejudicial.

It is true that the later act of March 27, 1914 (Acts 1914, p. 641), requires the court at every stage of the proceeding to disregard any error or defect in the proceedings which does not affect the substantial rights of the parties; and we have held in *Standard Paint Co.* v. *Vietor,* 120 Va. 595, 91 S. E. 752, and subsequent cases that since the passage of the latter act we must carry the doctrine of harmless error to its logical conclusion by disregarding every error which does not affirmatively appear to have prejudiced the party complaining. The difficulty in the way of applying that doctrine to the direction of a verdict, however, is that the act of 1912, if it meant anything at all, meant to declare that the giving of a peremptory instruction violates a substantial right and is *per se* reversible error. Everything

54

short of that extreme had been constantly recognized and scrupulously enforced by the courts without legislative action.

[5]    The statute against peremptory instructions is not to be construed as applying to cases in which the verdict of the jury depends necessarily and exclusively upon a question of law, such, for example, as the legal effect of a deed or contract (*Forest View Land Co.* v. *Atlantic Coast Line R. Co.*, 120 Va. 308, 314, 91 S. E. 202) ; nor is it to be construed as reinstating the scintilla doctrine, formerly prevailing in this State, but rejected by this court in *C. & O. Ry. Co.* v. *Stock,* 104 Va. 97, 108, 51 S. E. 161 (*Norfolk S. R. Co.* v. *Norfolk Tr. Exch.*, 118 Va. 650, 656, 88 S. E. 318). The statute simply draws the line upon the giving of "a peremptory instruction directing what verdict the jury shall render." In all other respects the trial courts have the same power in giving and refusing instructions which they possessed before the act was passed.

Undoubtedly, the literal application of the statute may result in some plainly erroneous verdicts, and may thus needlessly prolong litigation, but there is by no means a total lack of reason for the requirement that in every jury case depending upon questions of fact the trial court shall permit the jury to make up and return its own verdict, even though such court be satisfied that the proof has utterly failed on one side or the other. Taking the instant case as an illustration, while we do not express any opinion as to the weight of the evidence, it necessarily follows from our previous discussion of the facts that in our opinion a verdict for either party upon proper instructions would have enabled us to end the case here. As it is, we have before us no verdict of the jury at all, and the only course open to us, therefore, is to reverse the case and remand it for a new trial.

The duty and power of deciding finally whether there is evidence sufficient to take a case to the jury must reside somewhere, and, under the law as it now prevails, this duty and power rests upon this court. It might not often happen that we would reach a conclusion different from that of the trial court upon the facts, but it is apparent that wherever such difference of opinion does exist, the direction of a verdict by the lower court not only deprives one of the parties of a substantial right, but renders this court powerless to do otherwise than reverse and remand the cause for a new trial.

Nor would the rule forbidding a peremptory instruction have operated harshly upon the defendant in this case, if it be assumed that there was no evidence, or plainly insufficient evidence, to support a verdict for the plaintiff. In that event, the direction of a verdict for the defendant in hypothetical form would have been available; or if the defendant had not desired to risk a verdict under that sort of an instruction, and had confidence in its position, then a demurrer to the evidence afforded a simple and regular means not only of testing the sufficiency of the plaintiff's evidence, but of ending the case.

After all, however, the wisdom or unwisdom of the rule of practice, which has now assumed the form of a mandatory statute, is not for us to determine. The statute itself is plain. If the rule which it was intended to protect against innovation by the courts is a bad rule, the remedy must be sought at the hands of the legislature.

It would have been possible to dispose of this case without entering upon any discussion of the act of February 13, 1912. The judgment must be reversed for the refusal of the instructions requested by the plaintiff, and, in view of what has been said in regard to those instructions, it is hardly probable that upon the next trial the court would give a peremptory instruction. The question of the force

and effect of the act, however, was specifically raised and argued in the case, and we state our views upon it now so that the trial courts and the profession generally may have the benefit of them.

For the several reasons indicated in the course of this opinion, the judgment must be reversed and the cause remanded for a new trial, to be had not in conflict with the views herein expressed.

*Reversed.*