# Richmond.

## W. C. ATKINSON v. S. R. NEBLETT AND L. D. HATCH.

### March 18, 1926.

1. APPEAL AND ERROR—*Continuance—Discretion of Trial Court.*—A motion for a continuance is addressed to the sound discretion of the trial court under all the circumstances of the case, and the appellate court will not reverse its ruling upon such motion unless it appears that the court has abused such discretion.

2. CONTINUANCE—*Absence of Witness—Due Diligence—Witness a Party to the Action—Case at Bar.*—In the instant case defendant asked for a continuance on the ground of the absence of a witness for whom a subpoena had been issued. The summons was issued for the witness on the day preceding the trial and the return showed that two weeks previously the witness had moved to another city and that therefore the summons could not be executed. The reason assigned by defendant for his failure to have the summons issued at an earlier day was the presumption that the witness being a party defendant would be present at the trial. The trial court held that the defendant had not exercised due diligence and was not entitled to a continuance. It appeared from the record that a statement prepared by the absent witness was read to the jury and constituted a part of the evidence in the case.

   *Held:* That under the circumstances an assignment of error to the action of the trial court in refusing the continuance was without merit.

3. BILLS, NOTES AND CHECKS—*Action upon Note—Procedure—Order of Proof—Case at Bar.*—In offering the note sued on and then resting their case, plaintiffs, in the instant case were following the usual mode of procedure, a procedure approved by the Supreme Court of Appeals.

4. BILLS, NOTES AND CHECKS—*Fraud in the Procurement of Note—Burden of Proof to Show Holder in Due Course—Shifting of the Burden—Section 5621 of the Code of 1919.*—Under section 5621 of the Code of 1919, when the defendant in an action on a negotiable note defends on the ground of fraud in the procurement of the note and introduces evidence which shows that the title of any person who has negotiated the instrument was defective, then the burden shifts to the holder to prove that he, or some person under whom he claims, acquired the title as a holder in due course. The last mentioned rule, however, does not apply in favor of a party who became bound on the instrument prior to the acquisition of such defective title.

5. BILLS, NOTES AND CHECKS—*Sections 5617 and 5621 of the Code of 1919—
"Defective Title"—Case at Bar.*—In an action against the maker of a
note, defendant alleged that the note sued on was procured from
him through fraud on the part of his partner in a proposed timber
deal, who was at the time of the delivery of the note, the agent of
plaintiffs; that the note was passed to the plaintiffs under circum-
stances which were such as to apprise them of the fact that the
partner was not a *bona fide* holder, and that the plaintiffs were not
holders in due course. The note was obtained from defendant on
the promise of his partner that he would also sign it and apply it
on the payment of the timber land, but the partner did not sign it
and negotiated it in payment of other land, in which defendant had
no interest and without his knowledge and consent.

   *Held:* That, as between defendant and his partner, the note was
   negotiated "in breach of faith," thus rendering the title of the part-
   ner defective, under section 5617 of the Code of 1919, and that ac-
   cordingly under section 5621 of the Code of 1919 the burden was
   then upon the plaintiffs to show that they became holders in due
   course.

6. BILLS, NOTES AND CHECKS—*Fraud in the Procurement of Paper—Breach
of Confidence in Using Paper.*—If by reason of fraud in the procure-
ment of the paper by the payee, which goes to its validity, or by
some breach of confidence by the payee in using the paper, such as
fraudulently diverting the paper to another purpose from that for
which it was delivered, which also goes to its validity, the instru-
ment never had any vitality as a contract, in such cases, indeed,
if they involve a negotiable instrument, the title thereto is defective
under the provisions of section 5617 of the Code of 1919.

7. BILLS, NOTES AND CHECKS—*Action on Note—Defense that Note was Pro-
cured by Fraud—Striking Out Defendant's Evidence—Case at Bar.*—In
the instant case, an action on a note, defendant alleged that the
note sued on was procured from the maker through fraud on the part
of his partner in a proposed timber deal, who at the time of the
delivery of the note was an agent of the plaintiffs; that the note
was passed to the plaintiffs under circumstances which were such
as to apprise them of the fact that the partner was not a *bona fide*
holder, and that plaintiffs were not holders in due course. The
maker testified in his own behalf and introduced other evidence.
One of the plaintiffs was introduced as a witness on behalf of the
defendant and testified that he took the note in good faith and
had no notice of fraud. Plaintiffs moved the court to strike out
all of defendant's evidence except the testimony of this plaintiff.

   *Held:* That the trial court erred in sustaining the motion to strike
   out the evidence of the defendant and in taking the case from the
   jury.

8. DIRECTING VERDICT—*Peremptory Instruction—Prejudicial Error—Sec-*

*tion 6003 of the Code of 1919.*—Section 6003 of the Code of 1919 provides. that "in no action tried before a jury shall the trial judge give to the jury a peremptory instruction directing what verdict the jury shall render." The statute is mandatory and in an action on a note it was prejudicial error for the trial court to instruct the jury to find for plaintiffs.

9.  BILLS, NOTES AND CHECKS—*Action on Note—Reasonable Attorney's Fee.*—A reasonable attorney's fee is collectible when provided for in the face of the note.

10. BILLS, NOTES AND CHECKS—*Action on Note—Reasonable Attorney's Fee—Note Failing to Fix the Amount—Case at Bar.*—In the instant case, an action on a note, after the jury had been discharged, the court amended the verdict by adding to it a fee of $150.00 for the attorney for the plaintiffs. The note sued on provided for an attorney's fee in case payment should not be made at maturity but failed to fix the amount of the attorney's fee. One of the issues in the case was the amount of a reasonable fee to be paid the attorney for the plaintiffs. The record failed to disclose any evidence denoting what was a reasonable attorney's fee in the case and also failed to show upon what evidence the court based its conclusion in fixing the fee.

    *Held:* That the court's action in fixing the fee was erroneous.

11. BILLS, NOTES AND CHECKS—*Attorney's Fee—Note Silent as to Amount.*— When the note is silent as to the amount of the attorney's fee and the right to recover is denied, then the same rule applies as in other cases, and evidence must be introduced to sustain the allegation of the declaration, that the plaintiff is entitled to recover a reasonable attorney's fee.

12. VERDICT—*Amendment—Power of Court Before Discharge of Jury.*—the power of the trial court to amend a verdict as to a matter of form, before the discharge of the jury trying the case, is unquestioned.

13. VERDICT—*Amendment—Power of Court After Discharge of Jury.*—The power of the trial court to amend the verdict of a jury, after the trial has terminated, as to a matter of substance, has never been sanctioned, the court has no power to supply substantial omissions and the amendments in all cases must be such as to make the verdict conform to the real intent of the jury. The judge cannot, under the guise of amending a verdict, invade the province of the jury, or substitute his verdict for theirs.

14. VERDICT—*Power of Court Over Verdict—After Discharge of Jury.*—The power of the trial court over a verdict, after discharging the jury, is threefold: (a) To set aside the verdict and award a new trial; (b) to enter judgment *non obstante veredicto;* (c) to set aside the verdict and enter such judgment as to the court shall seem right and proper, under the provisions of section 6251 of the Code.

15. VERDICT—*Amendment of Verdict—Section 6251 of the Code of 1919.*—Even

under the broad provisions of section 6251 of the Code of 1919, the court is only empowered to set aside the verdict where the verdict is contrary to the evidence, or without evidence to support it, and may only enter judgment when there is sufficient evidence before the court to enable it to decide the case upon its merits. Where there is no evidence upon the question of the amount of an attorney's fee to which plaintiffs were entitled, the court was without warrant under this section in setting aside the verdict because contrary to the evidence, or in deciding the case upon its merits, and allowing an attorney's fee of $150.00.

16. BILLS, NOTES AND CHECKS—*Attorney's Fee—Questions of Law and Fact—Case at Bar.*—In the instant case, an action on a note, after the discharge of the jury, the court amended the verdict to allow an attorney's fee of $150.00 to counsel for plaintiffs. The note provided for an attorney's fee in case of failure to pay at maturity, but was silent as to the amount. It was contended by counsel for plaintiffs that the allowance of an attorney's fee and the amount thereof were questions of law for the court.

*Held:* That the issue was one of fact to be tried by the jury.

Error to a judgment of the Hustings Court, Part Two, of the city of Richmond, in an action of assumpsit. Judgment for plaintiffs. Defendant assigns error.

*Reversed.*

The opinion states the case.

*Geo. E. Haw* and *S. R. Carter,* for the plaintiff in error.

*Allen & Weaver,* for the defendants in error.

CAMPBELL, J., delivered the opinion of the court.

The judgment under review was obtained by the defendants in error (plaintiffs in the court below) against the plaintiff in error (hereinafter called defendant) upon a negotiable note executed by W. C. Atkinson, E. F. Roper and W. J. Mathews.

It appears from the record that Atkinson, on the

29th day of September, 1923, at the request of Mathews, went to Lunenburg county, Virginia, for the purpose of inspecting a tract of timber which they contemplated buying. After looking over the timber boundary, Mathews took Atkinson to a bank in Victoria, Virginia, and introduced him to the plaintiffs, Neblett and Hatch. Thereafter, Atkinson returned to his home in Henrico county, where he entered into an agreement with Mathews, whereby they agreed to purchase the tract of timber land in Lunenburg county, at the price of $3,750, the same to be paid one-half cash and the balance to be evidenced by a negotiable note for $1,750 to be signed jointly by Atkinson and Mathews.

About thirty days thereafter, Mathews obtained from Atkinson $875 for the purpose, as Atkinson testified, of applying same to the payment of the timber land, but which sum, it developed later, Mathews embezzled and for which offense he was tried and sentenced to the penitentiary. Before the discovery of the embezzlement, Mathews presented the note sued on to Atkinson for his signature as the note was made payable to bearer.

Before signing the note, Atkinson required Mathews to sign an agreement evidencing the fact that he was a joint owner of the timber land, and upon the further agreement that Mathews would also sign the note. According to the testimony of Atkinson, Mathews took the note and held it on a book in such a position that Atkinson could not see what he was doing, and simulated the affixing of his signature thereto, when in fact he merely wrote under the name of Atkinson the words, "Highland Spring, Virginia." Having thus obtained a delivery of the note, Mathews negotiated it to the plaintiffs, as hereinafter set forth. All of these

transactions occurred between the 10th day of November, 1923, and the latter part of January, 1924.

Some time during the latter part of January, 1924, W. J. Mathews, acting as the agent of the said Neblett and Hatch, for the sale of a farm in Charlotte county, got in touch with E. F. Roper, whom he had known for some months, and suggested to Roper that he could assist him in putting through a real estate deal, telling Roper that he had in Hanover county a tract of 100 acres of land and a note for $1,750 made by W. C. Atkinson, which note was good, and that he desired Roper to represent himself as the owner of the Hanover land and of the Atkinson note, and that thereupon he expected to make an exchange of the Hanover land and Atkinson's note for the Gilliam farm in Charlotte county, giving Neblett and Hatch a deed of trust on the Gilliam farm for twenty-two hundred and fifty dollars. For his services in the matter, Roper was to receive one-half interest in the equity in the farm. To this proposition Roper agreed, and thereupon, on the 22nd day of January, 1924, L. D. Hatch, one of the plaintiffs, Mathews and Roper, met at Murphy's hotel, Richmond, Virginia, at which meeting Mathews did all the talking and suggested all of the terms of the transaction. At this meeting, after the terms had been agreed upon, according to the statement of Roper, Mathews and Hatch requested Roper to endorse the Atkinson note, which he agreed to do provided Mathews would endorse the same; Mathews at that time assuring Roper that he would incur no liability in so doing.

According to Roper's statement, subsequent thereto he learned that the farm in Charlotte county was not worth what it had been represented to be. According to a written agreement entered into between E. F. Roper and S. R. Neblett and L. D. Hatch on January

22, 1924, the purchase price of the farm was placed at
$6,500, of which $4,250 was to be paid in cash and the
balance by deed of trust for $2,250.

It thus appears that in payment for a farm which
had been placed in the hands of W. J. Mathews for
sale at the price of $2,700, there was turned over to
Neblett and Hatch a tract of 100 acres of land in
Hanover county, the note of W. C. Atkinson for
$1,750, making a consideration of $2,750, and in
addition to this Roper gave a deed of trust to Neblett
and Hatch to secure balance of purchase price of
$2,250, making a total actual consideration, purport-
ing to be paid by Roper, of $5,000, for a farm which
had been listed at $2,700.

Subsequent to this transaction, of which Atkinson
had no knowledge, the note in question became due,
and Atkinson advised the holders thereof, when in-
formed who held it and where it was, that it had been
secured from him by fraud, and that he would not
pay it. Thereupon this suit was instituted.

The first assignment of error is the refusal of the
trial court to grant a continuance, on the motion of
Atkinson, because of the absence of Roper, for whom
a subpoena had been issued as a witness.

[1, 2] Upon the calling of the case for trial, Roper,
who was sued jointly with Atkinson, failed to appear
and make defense; thereupon judgment was entered
against him by default. It appears from certificate of
assignment of error number one that the summons
was issued for Roper on the day preceding the trial,
and the return of the officer showed that Roper, two
weeks previously thereto, had moved to the city of
Danville, Virginia, hence the summons could not be
executed. The only reason assigned by the defendant
for his failure to have the summons issued at an earlier

day was the presumption that Roper, being a party defendant, would be present at the trial. Upon the facts stated, the trial court was of the opinion that the defendant had not exercised due diligence and was not entitled to a continuance.

The question of continuance has been frequently dealt with by this court, and the law upon the subject is well settled. *Hewitt's Case,* 17 Gratt. (58 Va.) 627; *Walton's Case,* 32 Gratt. (73 Va.) 855; *Keesee, &c.* v. *B. G. Bank,* 77 Va. 132; *Payne* v. *Zell,* 98 Va. 294, 36 S. E. 379; *Matoaka Coal Corp.* v. *Clinch Valley Mining Corp.,* 121 Va. 522, 93 S. E. 799; *Lufty* v. *Com'th,* 126 Va. 711, 100 S. E. 829; *Barrack's Case,* 142 Va. 596, 128 S. E. 638; *Vineyard's Case,* 143 Va. 546, 129 S. E. 233.

In *C. & O. Ry. Co.* v. *Newton,* 117 Va. 263, 85 S. E. 461, 462, Judge Kelly, delivering the opinion of the court, said: "A motion for a continuance is addressed to the sound discretion of the trial court under all the circumstances of the case, and this court will not reverse its rulings upon such motion, unless it appears that the court has abused such discretion."

It appears from the record that a statement prepared by Roper was read to the jury and constitutes a part of the evidence in the case.

Under the facts and circumstances detailed, we are of the opinion that this assignment of error is without merit.

The next assignment of error is based upon the action of the trial court, after all the evidence was introduced, in sustaining the motion of the plaintiffs to strike out of the case all of the evidence of the defendant, except the evidence of L. D. Hatch.

While the defendant interposed a plea of non-assumpsit, the real issue in the case was that set forth

in a plea filed by the defendant, which alleged that the note sued on was procured from Atkinson, the maker, through fraud on the part of Mathews, who was, at the time of delivery, the agent of the plaintiffs, and that the note was passed to the plaintiffs under circumstances which were such as to apprise them of the fact that Mathews was not a *bona fide* holder and that the plaintiffs were not holders in due course, for value, and without notice of the fraud.

In passing upon this assignment we deem it unnecessary to set forth the evidence in detail.

After the jury were sworn to try the issue joined, the plaintiffs introduced in evidence the note sued on and then rested their case. Thereupon, the defendant, Atkinson, testified in his own behalf and then introduced the statement of Roper which was read to the jury. It then appears that L. D. Hatch, one of the plaintiffs, was introduced as a witness on behalf of the defendant. After detailing his connection with the Roper transaction and the manner in which the note was procured, Hatch, upon cross-examination, testified as follows:

"Q. Mr. Hatch?

"A. Yes, sir.

"Q. Did you have any notice whatever of any alleged fraud or improper means by which Mr. Mathews is said to have secured this note?

"A. No, sir.

"Q. Did you at the time you took the note know of any fact to put you on notice?

"A. No, sir.

"Q. Did you take the note in good faith?

"A. Yes, sir.

"Q. Did you pay value for it?

"A. Yes, sir.

"Q. Did you take it before maturity?

"A. Yes, sir."

This concluded the case upon the part of the defendant, and thereupon counsel for plaintiffs moved the court to strike out all of the defendant's evidence, except the testimony of Hatch, *supra*, which motion the court sustained.

[3] In offering the note sued on and then resting their case, plaintiffs were following the usual mode of procedure, a procedure approved by this court in *Holdsworth* v. *Anderson Drug Company*, 118 Va. 36, 87 S. E. 565. Under the provisions of section 5621 of the Code, "every holder is deemed *prima facie* to be a holder in due course, but when it is shown that the title of any person who has negotiated the instrument was defective the burden is on the holder to prove that he or some person under whom he claims acquired the title as a holder in due course. But the last mentioned rule does not apply in favor of a party who became bound on the instrument prior to the acquisition of such defective title."

[4] It is thus seen that when the defendant in an action on a negotiable note defends on the ground of fraud in the procurement of the note and introduces evidence which shows that the title of any person who has negotiated the instrument was defective, then the burden shifts to the holder to prove that he, or some person under whom he claims, acquired the title as a holder in due course. *Duncan* v. *Carson*, 127 Va. 306, 103 S. E. 665, 105 S. E. 62.

The only exception to this rule is found in the last sentence of the section: "But the last mentioned rule does not apply in favor of a party who became bound on the instrument prior to the acquisition of such defective title."

[5] It is the contention of plaintiffs that since Atkinson admitted in his evidence that the note was signed by him and intentionally delivered to Mathews, that therefore the note was untainted with fraud at the time of its delivery, and plaintiffs come within the saving clause of section 5621, and no burden whatever rests upon them.

Before this contention can be maintained, it must appear that the provisions of section 5617 of the Code do not apply. That section is as follows:

"The title of a person who negotiates an instrument is defective within the meaning of this chapter when he obtained the instrument or any signature thereto by fraud, duress, or force and fear or other unlawful means, or for an illegal consideration or when he negotiates it in breach of faith or under such circumstances as amount to a fraud."

As between Atkinson and Mathews, the note was negotiated "in breach of faith," thus rendering the title of Mathews defective. This being true, the burden was then upon the plaintiffs to show they became holders in due course. *Piedmont, &c.* v. *Hatcher*, 94 Va. 229, 26 S. E. 505.

In *Duncan* v. *Carson*, 127 Va. 306, 103 S. E. 665, 105 S. E. 62, Judge Burks said: "It is objected that Duncan's special plea, sworn to by him, admits that the notes were payable at six months, and that in view of the conflict between the statements of the plea and his testimony he should be held to the statement in his plea. But it must be borne in mind that the plea was prepared by counsel, and it was for the jury to determine which was correct, and if the jury, making inferences most favorable to the defendant, might have found in favor of the testimony of Duncan, it was the duty of the trial court, on the demurrer to the

evidence, to have so decided. It must be accepted, therefore, that at least fraud in the procurement of the contract was established by the testimony of Duncan. This threw upon Carson the burden of showing that 'he or some person under whom he claims acquired the title as a holder in due course.' This he attempted to do by his own testimony and that of Allen, the agent who made the sale. The credibility of this testimony, though undisputed, was for the jury. *Joy* v. *Diefandorf*, 130 N. Y. 6, 28 N. E. 602, 27 Am. St. Rep. 484."

[6] In *Continental Trust Co.* v. *Witt*, 139 Va. 458, 124 S. E. 265, it is stated that "if by reason of fraud in the procurement of the paper by the payee, which goes to its validity, or by some breach of confidence by the payee in using the paper, such as fraudulently diverting the paper to another purpose from that for which it was delivered, which also goes to its validity, the instrument never had any vitality as a contract. In such cases, indeed, if they involve a negotiable instrument, the title thereto is 'defective' under the provisions of section 5617 of the Code."

In *Hillman* v. *Cornett*, 137 Va. 200, 119 S. E. 74, Judge Burks, construing section 5621 of the Code, said: "The clause referred to relates to paper which is in a state of negotiability when it is negotiated to the holder, and the apparent purpose of the clause was to cut off defenses of fraud between intermediate claimants. If the paper was in a state of negotiability when acquired by the holder in due course, it was thought that a payment to such holder should protect the maker, regardless of frauds between intermediate claimants of the paper unknown to the holder. Prior to the negotiable instruments act it was held in a number of cases that if the holder of the negotiable

paper had to trace the title through fraudulent practices or unclean hands, the burden was thrown upon him to show that he was a holder in due course, else he could not recover. In *Parsons* v. *Utica Cement Co.*, 82 Conn. 333, 337, 73 Atl. 785, 787 (135 Am. St. Rep. 271), it is said:

"Whether he acquired the paper by purchase or gift would, under ordinary circumstances, be of itself unimportant. But after proof that it was once in the hands of a fraudulent holder, it may justly be presumed to continue in the hands of a holder of that character, until the contrary be proved. *Collins* v. *Gilbert*, 94 U. S. 753, 761, 24 L. Ed. 170. The position of the holder of negotiable paper is of an exceptional character. He may acquire a title through a thief, and yet maintain it against the original owner. But his possession is not enough to support a recovery, after it once appears that he must trace title through fraudlent practices and unclean hands. *Totten* v. *Bucy*, 54 [57] Md. 446, 452. This is equally true, whether the fraudulent practices were connected with the original inception of the paper, or, as in the present instance, occurred subsequently, to the prejudice of an intermediate holder. *Fulton Bank* v. *Phoenix Bank*, 1 Hall (N. Y.) 562; 2 Parsons on Notes and Bills, 283; 4 Amer. & Eng. Ency. of Law (2d ed.) 322. The case of *Kinney* v. *Kruse*, 28 Wis. 183, asserts the contrary, but is opposed to the strong current of authority."

[7] Without the slightest intimation of whether or not the evidence supports the contention of the plaintiffs or that of the defendant, we are of the opinion, from a careful examination of the same, that it was error for the trial court to sustain the motion. of the plaintiffs to strike out the evidence of the defendant and take the case from the jury.

Another ground of error relied upon is that the court erred in directing a verdict for the plaintiffs. This assignment of error is set forth in bill of exceptions No. 2.

Upon the motion of the plaintiffs to strike out the evidence of the defendant, the court rules as follows: "The court sustains the motion of the plaintiffs and excludes all of the evidence of the defendant except the evidence of Mr. Hatch that he took the note in good faith; as the evidence does not show, in the opinion of the court, knowledge of any fraud on the part of Hatch and Neblett, either at the time of or prior to the taking of the note sued upon, so the evidence of the defense will be excluded from your consideration. There is nothing left for you, gentlemen, but to say: 'We, the jury, on the issue joined, find for the plaintiff,' and fix his damages at whatever the amount sued for is."

[8] Section 6003 of the Code of 1919 provides: "In no action tried before a jury shall the trial judge give to the jury a peremptory instruction directing what verdict the jury shall render."

This section of the Code was construed by this court in *Small* v. *Va. Ry. & Power Co.*, 125 Va. 416, 99 S. E. 525, in an opinion delivered by Judge Kelly. The opinion deals at length with the history of the act, its object and its effect. While too lengthy to quote in full, we are content to rely on the following excerpts therefrom:

"It would seem clear, therefore, that the act of 1912 was passed for the express purpose of prohibiting the application of the doctrine of harmless error to the mandatory direction of verdicts. At the time of its passage, as we have just seen, this court still recognized peremptory instructions as erroneous, and had barely

and cautiously gone far enough to sustain them in cases where the error was plainly harmless; and it can hardly be doubted, therefore, that the act meant to declare that even in such cases a violation of the settled rule of practice on the subject should not be regarded as otherwise than prejudicial. * * The giving of a peremptory instruction violates a substantial right and is *per se* reversible error."

"The statute simply draws the line upon the giving of a peremptory instruction directing what verdict the jury shall render."

"After all, however, the wisdom or unwisdom of the rule of practice, which has now assumed the form of a mandatory statute, is not for us to determine. The statute itself is plain."

Following this decision, in the case of *Forbes & Co.* v. *Southern Cotton Oil Co.*, 130 Va. 245, 108 S. E. 15, Judge Burks, delivering the opinion of the court, said: "The practice of granting peremptory instructions directing a verdict never obtained to any considerable extent in this State, though it was said that where no other verdict could have been properly rendered, the error, if any, was harmless, and the judgment rendered thereon would not be reversed. *Hargrave's Admr.* v. *Shaw Land Co.*, 111 Va. 84, 68 S. E. 278, Ann. Cas. 1912A, 151. The right to grant such instructions was in terms forbidden in 1912, Ch. 27, p. 52; Code, sec. 6003."

See also *Reeves* v. *White*, 136 Va. 447, 118 S. E. 103.

Plaintiffs seek to avoid the operation of the statute by a reliance upon the exception thereto stated in the *Small Case, supra,* to-wit: "The statute against peremptory instructions is not to be construed as applying to cases in which the verdict of the jury depends necessarily and exclusively upon a question of law,

such, for example, as the legal effect of a deed or contract;   *   *   "

We cannot accede to the contention of plaintiffs that the question here involved is such a question of law as is contemplated by the language quoted, that is, the legal effect of a deed or contract.

In our opinion, the statute is mandatory and it was prejudicial error for the trial court to give to the jury the instruction it did.

The last assignment of error relates to the action of the court in amending the verdict after the discharge of the jury by adding thereto a fee of one hundred and fifty dollars for the attorney for the plaintiff.

From bill of exception Number 4, the facts appear thus: "After the jury had returned the verdict finding in favor of the plaintiff for $1,750 and interest as therein set forth, and after the jury had been discharged, the court, upon motion of counsel for plaintiff, fixed the attorney's fee claimed by the plaintiffs in their declaration at $150; to which action of the court in so fixing the attorney's fee after the verdict of the jury had been rendered, and after the jury had been discharged, the defendant, W. C. Atkinson, by counsel, objected. The objection was overruled, and exception noted."

The pertinent part of the note sued on is as follows: "   *   *   *   and further agree to pay costs of collection, or an attorney's fee, in case payment shall not be made at maturity."

[9] That a reasonable attorney's fee is collectible when provided for in the face of the note has been held in *Colley* v. *Summers-Parrott Hdw. Co.*, 119 Va. 439, 89 S. E. 906, Ann. Cas. 1917D, 375; *Triplett* v. *Bank*, 121 Va. 190, 92 S. E. 897; *Cox* v. *Hagan*, 125 Va. 656, 100 S. E. 666.

[10, 11] It is to be observed that the note sued on fails to fix the amount of the attorney's fee as is usual in negotiable notes. That one of the issues in the case was the amount of a reasonable fee to be paid the attorney for the plaintiffs is evidenced by the language of the last count of the declaration. This count avers:

"And for this also, to-wit, that heretofore, to-wit, on the 12th day of May, 1924, the said defendants were indebted to the said plaintiffs in the sum of $1,750.00, with interest from the 10th day of November, 1923, together with costs of collection and a reasonable attorney's fee on account of the nonpayment at maturity of the note described in the foregoing counts for money before that time lent by the plaintiffs to the defendants, at their special instance and request."

Upon this issue, though we scrutinized the record carefully, we fail to find any evidence denoting what is a reasonable attorney's fee in this case. The record also fails to show upon what evidence the court based its conclusion in fixing the fee.

That the court, after hearing the case, came to the conclusion that a fee of one hundred and fifty dollars was a reasonable one, does not relieve the situation. When the note is silent as to the amount of the attorney's fee and a right to recover is denied, then the same rule applies as in other cases, and evidence must be introduced to sustain the allegation of the declaration, that the plaintiff is entitled to recover a reasonable attorney's fee.

[12] The power of a trial court to amend a verdict as to a matter of form, before the discharge of the jury trying the case, is unquestioned. *Porterfield's Case,* 91 Va. 801, 22 S. E. 352. The power of a trial court to amend the verdict of a jury, after the trial has ter-

minated, as to a matter of substance, has never been sanctioned by the appellate court.

[13] In 27 R. C. L., section 62, we read: "The court has no power to supply substantial omissions and the amendments in all cases must be such as to make the verdict conform to the real intent of the jury. The judge cannot, under the guise of amending a verdict, invade the province of the jury or substitute his verdict for theirs."

In *Melton's Case*, 132 Va. 783, 111 S. E. 291, this court held that the verdict could not be amended by the jury itself, after a discharge thereof by the court. The opinion of Judge Burks quotes with approval the doctrine laid down in *Sargent* v. *State*, (1842) 11 Ohio 472, as follows: "After the verdict has been received and the jury discharged * * * the control of the jury, and of the court over such verdict, is at an end. The court cannot alter it, nor can the jury be recalled to alter or amend it."

[14] The power of the trial court over a verdict, after discharging the jury, is threefold: (a) To set aside the verdict and award a new trial; (b) to enter judgment *non obstante veredicto;* (c) to set aside the verdict and enter such judgment as to the court shall seem right and proper, under the provisions of section 6251 of the Code.

[15] It has been suggested that the effect of the action of the court in amending the verdict was in conformity with section 6251. We do not think so. Even under the broad provisions of this section, the court is only empowered to set aside the verdict where the verdict is contrary to the evidence, or without evidence to support it, and may only enter judgment when there is sufficient evidence before the court to enable it to decide the case upon its merits.

As stated, there is no evidence upon the question whatever, and therefore the court was without warrant in setting aside the verdict because contrary to the evidence, or in deciding the case upon its merits.

[16] It is earnestly contended, however, by counsel for the plaintiff, that the allowance of an attorney's fee and the amount thereof were questions of law for the court, and the cases of *Colley* v. *Summers-Parrott Co.*, 119 Va. 439, 89 S. E. 906, Ann. Cas. 1917D, 375, and *Triplett* v. *Second National Bank of Culpeper*, 121 Va. 189, 92 S. E. 897, are relied upon to support this contention. We do not consider these cases as so holding.

In the *Summers-Parrott Case*, the question considered was the validity of a ten per cent attorney's fee provided for in the face of the note, payable in the event action was brought to collect the note. The action was by notice of motion, issue was joined thereon, a trial by jury was had and the judgment included the attorney's fee.

In the *Triplett Case*, the whole matter of law and fact was submitted to the court, which rendered a judgment for the principal amount of the note, with ten per cent in addition as attorney's fee, as provided in the face of the note.

In *Cox* v. *Hagan*, 125 Va. 678, 100 S. E. 666, the question relative to the attorney's fee was whether or not the defense that the fee provided for in the face of the note was unreasonable could be made by special plea under section 3299 of the Code, and if so, how the issue should be tried, whether by the court or by a jury. Judge Sims, delivering the opinion of the court, said: "The procedure should be the same as upon a plea under such statute of any other matter pleadable thereunder. If the issue upon the plea is such that the

facts pleaded are admitted, the sufficiency of the defense, including the determination of what amount should be recovered as an attorney's fee, is for the determination of the judge. If the issue upon the plea is one of fact, that issue must be tried by a jury, subject to such proper instruction as may be given by the judge * * * *."

Our conclusion upon the whole case is that the assignments of error considered are well taken, and that the judgment must be reversed, the verdict set aside and the case remanded for a new trial.

*Reversed.*